The opinion of the court was delivered by
Duncan, J.
Appeal from the final settlement of the administration account of James Breaden and Robert Irvine, executors of the last will and testament of Thomas Heager, deceased, by Patrick Devine, guardian of Elizabeth Heager, minor daughter of Thomas Heager, and of John and Joseph Emmet and Thomas Carney, minor children of Bridget Carney, legatees under the will of Thomas Heager, from the decree of the Orphans’ Court of Cumberland county.
The items to which exceptions are made, are Nos. 3 and 4 in the administration account, payments made to The Agricultural Bank. These payments are alleged to have been made with the paper of that bank, bought by the accountants at a discount of twenty-five per cent., and which the appellants contend should be only credited for at the sum the accountants gave for that paper.
Taking the answers of the executors, on their examination before the referees, it is clear that a sum of at least one thousand dollars of the notes of that bank was bought up, at a discount of twenty-five per cent., with a view to pay this bank debt of the testator. *
The primary object in the purchase of the money from Ristor, says William Breaden, was, “that we probably expected it would go to pay the debt due to the bank;” and William Irvine says, he does not know but he did consider this judgment as one of the judgments to which the money ought to be applied. Barney Carney, a witness on behalf of the appellants, first informed Breaden, where this money could be procured, and urged him to get it to pay off this debt. He is not contradicted by either of the appellees. William Irvine was in Breaden’s store, as he says, when Breaden and Ristor were talking about the money; and admits that he bought of Ristor, something better than five hundred-dollars, at twenty-five per cent, discount, and Breaden about five hundred dollars at the same discount.
*66 If this had been an answer to a bill in chancery, calling on the executors to discover what they had actually advanced from their own money, to discharge this debt, I cannot hesitate or doubt, but that the Chancellor would decree that they should have only credit for that sum. The citation to settle was in the nature of such bill, and their statements to the referees referred to and made a part of the case—an answer. The Orphans’ Court proceeds on chancery principles, and always examines the accountants on oath. At least the sum of one thousand dollars bought in, for the purpose of paying this debt, at a discount of one fourth, is admitted. The answer admits that, and proceeding on that admission, which is sure ground, we are to consider what in equity should be credited to the executors, whether the benefit arising from the situation in which they were placed, by their appointment as executors and trustees, should enure to their own benefit, or the legatees should have the advantage, by the accident of the depreciation of this bank’s paper. In chancery, the principle is one never departed from, and is as binding as any axiom of the common law; that he who takes upon him a trust, takes it for the benefit of him for whom he is intrusted, but not to take any advantage for himself A trustee shall never be permitted to raise in himself an interest opposite to that of his cestui que trust; and it is on this ground that it has been always held, that a trustee or particular agent shall not be allowed to become the purchaser of that which he holds in trust. Whelpdale v. Cookson, 2 Ves. 9. Morret v. Paske, 2 Atk. 54. So, if a trustee or executor obtain the renewal of a term in trust, such renewal shall be for the benefit of the trust. Holt v. Holt, 1 Chan. Cas. 191. Nor will the circumstance of the lessor having refused to renew to the cestui que trust, he being an infant, differ the case. Chan. Cas. 61. There cannot well be a stronger proof of the inflexibility of the rule than this: he may decline to accept the lease; but, if he does, though the lessor would not grant the benefit to the infant, if his trustée chooses to take it, it enures to the benefit of the infant. But, to come to the very case, if a trustee or executor compounds debts or mortgages, or buys them in for less than is due on them, he shall not take the benefit himself, but other creditors and legatees shall have the benefit of it also. 1 Salk. 155. Darcy v. Hall, 1 Vern. 49. Plowman v. Plowman, 2 Vern. 289. And for want of them the benefit shall go to the party who is entitled to the surplus. 1 Fonbl. 187. But if one acting for himself, and, not in the circumstance of an executor or trustee, buys in a mortgage for less than it is worth, he shall be allowed all that is due on the mortgage; for he stands in the place of him that assigned the mortgage, who might have given it to him gratis. And since he runs the hazard, if a loss happens, he ought to have the benefit, if it turns to his advantage. Ibid. The accountants eould only act in the character of executors and trustees: there *67 could be no loss, the funds were amply sufficient, though not immediately available. The question never could be made, if the payment was with the funds of the testator in hand applied to the payment. It is only where the compensation is with the executor’s own money. It is said the representatives of Heager are no losers, when they pay the whole money due; but it does not follow, that the executors are to be gainers. . In this consists the whole fallacy of the argument; for any gain that is to be made is for the benefit of cestui que trust: and hence it is, that if a trustee sells to himself trust property, though for a fair and full price at the time, and the property rises in value, and he sells it for more, he is accountable for such surplus to the cestui que trust. The executors, only in the character of executors, could pay this debt.- They reaped from their situation this opportunity for gain: that gain, then, accrues to them in their representative character. They bought in this paper, and instantly it was converted into gold, without any possibility of a loss. If, during the war of the revolution, when one hard dollar was worth sixty, or even one hundred continental dollars, when they Vvere a legal tender in payment of specie debts, all the world would exclaim at the injustice- of an executor, who should with five dollars buy five hundred dollars, or with fifty buy five thousand, pay off a spécie debt, lie by, and not settle his accounts until hard money times, and then charge the estate with it as a specie payment: yet the principle is exactly the same, though the injustice is in a less degree. The gain, great or small, made while they act not for themselves, but in the-circumstance of executors, is for the benefit of the trust estate.
There is another sum of one hundred dollars, bought at a discount of tender cent., that is to be subject to the deduction often percent. I cannot find any thing in the evidence beyond these sums, and we cannot go by conjecture, however probable it m.ay be, that on the whole sum paid the Agricultural Bank, the accountants have gained twenty-five per cent. But the evidence does not reach to this. On the executors’ own statement, they were chargeable so far. There was nothing of fact to leave either to auditors or referees. It was a matter for the decision of the Orphans’ Court, and therefore it is my opinion the report was open to the inquiry of that court. Even giving it the weight of a reference, the account must be reported to the Orphans’ Court for their confirmation; the executors could not otherwise be discharged from their citation. It was returned, and received their sanction. How it would have been, had the guardian and executors entered into an agreement that it should be conclusive, and without appeal, whether it would or would not have bound the infants, is a question that it is not necessary now to decide. It appears to me, that it would.be an extraordinary assumption of power by a guardian, and might b.e perverted to mischievous purposes. The right of appeal is not relin *68 quished, if he could have so done. On a question so simple and plain, if the referees have clearly mistaken the law, the mistake would be excess of power, and that court should have set aside the report; and that they did mistake the law appears to this court quite clear; and, coming up by appeal, this court takes up all de novo. The Orphans’ Court did not consider the report conclusive: they examined and confirmed it. Had this been a report to the Court of Common Pleas, and. judgment had been rendered on it by that court, this court, on a writ of error, could only have sustained legal objections appearing on the face of the report; but it comes up to be decided on de novo. New evidence may be admitted, and it is in a great degree a new case. If a fact is disputed in the Orphans’ Court, and an issue is prayed and directed, and a verdict and judgment rendered, so far as respects that fact, the verdict and judgment'would be conclusive. Paying every respect to the opinion of these respectable referees, and giving it more,weight than an account stated by auditors, who are but the mere clerks of the court, I think they have committed an error in allowing full credit for the items No. 3 and 4; and that the decree of the Orphans’ Court is erroneous, and should be .rectified by deducting twenty-five per cent, on one thousand dollars, the money bought from Ristor, to be applied to this debt, and ten per cent, from the one hundred dollars, bought from Doyle $t that discount. This being the gain made by the accountants in the character of executors; and that this alteration being made in the decree, it should stand confirmed; but it is reversed, so far as respects these sums.
Decree .reversed.